STATE OF NORTH CAROLINA v. GEORGE PHILLIP SINGS (ALIAS PHILLIP GEORGE SINGS)

No. 7726SC553

(Filed 3 January 1978)

1. **Criminal Law §§ 76.4, 98.2— violation of sequestration order—refusal to allow testimony—no error**

    The trial court did not abuse his discretion in refusing to allow defendant's father to testify at a voir dire hearing to determine admissibility of defendant's pre-trial confession, since the father had violated the court's sequestration order, and the court could properly exclude him from testifying; furthermore, the father's testimony was merely cumulative, and defendant failed to show that he was prejudiced by its exclusion.

2. **Criminal Law § 76.6— in-custody statement—finding of voluntariness on voir dire—sufficiency of evidence**

    The trial court did not err in denying defendant's motion to supress his in-custody statement where the court made findings based upon competent evidence that police officers told defendant that members of his family had helped them recover stolen property from defendant's residence but no threats were made to bring charges against the family members; defendant was informed of his constitutional rights mandated by *Miranda* for at least the third time immediately prior to giving his statement to police; defendant signed a waiver of rights form and made incriminating statements which were reduced to writing by a police officer; defendant was in good physical and mental condition at the time he gave the statement; the statement was sensible; defendant understood his constitutional rights and indicated that he did not wish to have a lawyer present; the statement was not the result of any alleged illegal search or seizure of defendant's premises; and defendant was not under the influence of any intoxicating liquor at the time he made the statement.

1

**3. Criminal Law § 75.3— illegally seized evidence—confronting defendant with—statement not rendered involuntary**

　　Even if a warrantless search conducted by police without defendant's knowledge and while he was in custody was illegal, the fact that defendant was shown items recovered during the search just prior to making incriminating statements did not, *ipso facto*, render the statements involuntary, since the use of illegally seized property is only one circumstance surrounding an in-custody statement to be considered in determining whether the statement is voluntary and admissible.

**4. Criminal Law § 21— taking defendant before magistrate—seven hour delay—no unreasonableness**

　　Where seven hours elapsed between the time defendant was arrested and the time he was taken before a magistrate for the purpose of setting bail, the delay was not unreasonable in violation of G.S. 15A-501 and 15A-511, since the delay was necessary in order for officers to recover stolen goods and to attempt to locate a person who was arrested with defendant but who escaped during recovery of the stolen goods.

APPEAL by defendant from *Grist, Judge*. Judgment entered 10 February 1977 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 26 October 1977.

Defendant was indicted and tried for the offense of accessory after the fact to felonious breaking and entering and larceny. At trial, the State introduced defendant's statement in substance confessing to the charges against him, which he had given to police in the early hours of 3 January 1976, the night of his arrest. This statement was admitted pursuant to order of Barbee, Judge, entered 19 November 1976, denying defendant's motion to suppress the statement. The order of Judge Barbee was supported by findings of fact and conclusions of law and followed a pre-trial *voir dire* hearing at which the State and defendant presented evidence.

Further facts will be brought out as necessary in the discussion of the issues raised by this appeal.

The jury found defendant guilty as charged. From judgment sentencing him to imprisonment for not less than two nor more than three years, defendant appealed.

*Attorney General Edmisten, by Assistant Attorney General Archie W. Anders and Associate Attorney Jane Rankin Thompson, for the State.*

*Walker & Walker, by Frank H. Walker, for defendant.*

BROCK, Chief Judge.

[1]   Defendant first assigns error to Judge Barbee's refusal to permit defendant's father to testify in defendant's behalf at the *voir dire* hearing. The record reveals that Judge Barbee, upon motion of defendant, had ordered the sequestration of all the witnesses at the *voir dire* proceeding and had instructed them not to discuss the case at all. Defendant's father was summoned by telephone by one of his children (not a witness) who was present in the courtroom and who informed him as to certain testimony which had been given in the proceeding. Judge Barbee excluded the witness' testimony due to violation of the sequestration order.

Defendant argues that the court either had no discretion or abused its discretion in excluding the testimony of defendant's father. We disagree. An order to sequester witnesses is issued in the sound discretion of the trial judge. *State v. Cook*, 280 N.C. 642, 187 S.E. 2d 104 (1972); *Lee v. Thornton*, 174 N.C. 288, 93 S.E. 788 (1917). The purpose of the sequestration order is to protect against colluded testimony; if the order is disobeyed, the court can exclude the witness from testifying. *Lee v. Thornton, supra.*

Furthermore, defendant has failed to show that he suffered any prejudice from Judge Barbee's action. The record shows that the witness told the court before being dismissed from the stand that he was present when defendant took a drink of vodka while being questioned by police officers at his (defendant's) house. This was merely cumulative of testimony previously given by defendant. No showing was made of any other material testimony that the witness would have given had he been allowed to testify. *See, State v. Hodge*, 142 N.C. 676, 55 S.E. 791 (1906). On the basis of the record before us, we cannot say that Judge Barbee abused his discretion in refusing to allow defendant's father to testify at the *voir dire* hearing. Defendant's first assignment of error is overruled.

Defendant next assigns error to the admission of his confession into evidence. He contends that his statement was not voluntary and thus inadmissible for four reasons: (1) it was triggered by the fruits of an illegal search and by threats to involve defendant's family in the case; (2) it was obtained while defendant was in a weakened condition due to lack of food and sleep and as a result of a consumption of alcohol; (3) it was obtained as a result of de-

fendant's detention in violation of G.S. 15A-501 and 15A-511; and (4) it was obtained by interrogation after defendant had stated that he did not wish to give a statement. We have thoroughly examined the record as to all these contentions and find them to be without merit.

[2] At the conclusion of the *voir dire* hearing, the presiding judge made findings of fact and conclusions of law and denied defendant's motion to suppress the statement. These findings of fact are conclusive and binding on appeal if supported by competent evidence. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975), judgment imposing death penalty vacated, 428 U.S. 908 (1976).

Judge Barbee found extensive facts regarding the events leading up to defendant's confession. He also found facts to the effect that the police officers told defendant that members of his family had helped them recover the stolen property from defendant's residence; that defendant was informed of his constitutional rights mandated by *Miranda* (for at least the third time) immediately prior to giving his statement to police; that defendant signed a waiver of rights form and made incriminating statements which were reduced to writing by one of the police officers; that defendant's statements were read back to him, and he read the written statement, made some changes, and signed it. The court further found as facts that defendant was in good physical and mental condition at the time he gave the statement; that the statement he gave was sensible; that he understood his constitutional rights and indicated that he did not wish to have a lawyer present; that the statement was not made by defendant pursuant to any "blackmail" or threats to bring charges against members of his family; that the statement was not the result of any alleged illegal search or seizure of defendant's premises; and that defendant was not under the influence of any intoxicating liquor at the time he made the statement. On the basis of the findings of fact, Judge Barbee concluded, *inter alia,*

"VI. That the defendant was in full understanding of his constitutional rights to remain silent and his rights to counsel, and all other rights;

VII. That the defendant purposely, freely, knowingly, understandingly, voluntarily and intelligently waived each of these rights and thereupon made a statement to the officers above mentioned;".

[3] Defendant contends that his confession was induced by the use of property recovered during an alleged illegal search of his residence. Judge Barbee declined to rule on the legality of the search, concluding instead that defendant was not induced by any illegal search or the fruits thereof. Assuming for the sake of discussion that the warrantless search conducted by police without defendant's knowledge and while he was in custody was indeed illegal, the fact that defendant was shown items recovered during the search just prior to making incriminating statements does not, *ipso facto*, render the statements involuntary. In *State v. McCloud*, 276 N.C. 518, 173 S.E. 2d 753 (1970), it was held that "voluntariness remains the test of admissibility of a confession, and the use of the illegally seized property is only one circumstance surrounding the in-custody statement to be considered in determining whether the statement is voluntary and admissible." 276 N.C. at 529, 173 S.E. 2d at 761. Other factors which the Supreme Court in *McCloud* felt must be weighed in determining admissibility of the confession included "failure of the record to show that: (1) defendant was mentally defective, (2) there was sustained interrogation or promise of reward resulting in a confession, (3) there were threats or coercive acts by the police accompanying or following the arrest, (4) defendant was held incommunicado, or (5) officers failed to promptly and fully warn him of his constitutional rights." *Id.*

In the instant case, there is competent evidence to support the findings that defendant was not coerced by threats to arrest his family; that he was not intoxicated; that he was in good physical condition; that he was fully apprised of his constitutional rights and signed a waiver of those rights. The record shows that defendant was not subjected to prolonged interrogation prior to confessing. The record fails to show that defendant was mentally defective. Furthermore, one of the police officers testified that defendant stated that he would have confessed earlier but he didn't want to get his roommate, Garcia, who was a suspect in the case, in trouble. Based on the entire record, we do not think that defendant's confession was the fruit of any illegal search. We find no error in the ruling by Judge Barbee.

The findings that defendant was in good physical and mental condition and was not intoxicated are supported by competent evidence and are thus conclusive. As such, there is no merit to

defendant's contention that the statement was obtained while he was in a weakened condition due to lack of food and sleep, and while under the influence of a drink of vodka consumed some eight hours prior to giving the statement.

[4]   Defendant next contends that his statement was obtained as a result of his detention in violation of G.S. 15A-501 and 15A-511. The pertinent provisions of these two sections require that upon arrest of a suspect, law-enforcement officers must take the suspect before a magistrate for purpose of setting bail *without unnecessary delay.* Judge Barbee found as a fact that the delay in taking defendant before a magistrate was necessary. This finding is supported by uncontradicted evidence which shows that defendant and Garcia were first arrested and taken to the Law Enforcement Center around 8:30 p.m. on 2 January 1976; that upon separate questioning, Garcia agreed to lead police officers to the rest of the stolen property; that Garcia led the officers to the home of defendant's sister and brother-in-law, who took them back to defendant's house and showed them where the property was located; that while they were retrieving the property, Garcia escaped; that the officers searched the neighborhood in vain until about 1:30 a.m. on 3 January, and then returned to the Law Enforcement Center at which time defendant was questioned and gave his incriminating statement. Shortly after giving the statement, which he signed at 3:36 a.m., defendant was taken before a magistrate. This evidence clearly supports the finding of fact that the delay in taking defendant before a magistrate was necessary. The arresting officers were recovering the stolen goods and attempting to locate the escaped Garcia between the times of defendant's arrest and his making the statement. It appears that defendant was taken before a magistrate as soon as was reasonably possible.

Defendant further contends that his statement was taken after he had stated that he did not wish to give a statement. As noted *supra,* Judge Barbee found as a fact that defendant was advised of and chose to waive his constitutional rights, including the right to remain silent and to make no statements, and the right to have an attorney present. Although there is conflicting testimony on these points, the court's findings of fact are supported by competent evidence and are conclusive.

Thus defendant's second assignment of error is overruled.

Defendant's third and final assignment of error is to the failure of Judge Grist to reconsider the admissibility of the confession as a result of new evidence introduced at trial. This assignment of error is without merit. The alleged new evidence offered at trial was (1) the testimony of Officer Styron that when defendant was first taken to the Law Enforcement Center on 2 January, he stated that he didn't want to give a statement, and (2) testimony of defendant's father that defendant had taken a drink of vodka at the time of his arrest at his home. We find no prejudice in the trial judge's failure to reconsider the admissibility of defendant's statement on these facts. As to Officer Styron's testimony, although defendant refused to give a statement at 9:00 p.m., he was not interrogated at that time, and affirmatively waived his right to remain silent later, at 2:00 a.m. *See, State v. Jones,* 278 N.C. 88, 178 S.E. 2d 820 (1971). As to the testimony of defendant's father, as we noted *supra,* defendant testified that he had taken the drink, and his father's testimony was merely cumulative. This assignment of error is overruled.

In our opinion, defendant received a fair trial, free from prejudicial error.

No error.

Judges MARTIN and CLARK concur.