### NATIONAL LABOR RELATIONS BOARD v. STOLLER et al.

#### No. 13445.

United States Court of Appeals
Ninth Circuit.

Sept. 23, 1953.

Rehearing Denied Oct. 21, 1953.

George J. Bott, Daivid P. Findling, A. Norman Somers, Frederick U. Reel, Margaret M. Farmer, Washington, D. C., for petitioner.

———◆———

Cameron Sherwood, Robert A. Comfort, Walla Walla, Wash., for respondent Harvey Stoller.

Wettrick, Flood & O'Brien and George J. Toulouse, Jr., Bassett, Geisness &

Vance, Seattle, Wash., for respondent Laundry & Dry Cleaners Union, Local 197.

Before MATHEWS, HEALY and BONE, Circuit Judges.

MATHEWS, Circuit Judge.

The National Labor Relations Board has petitioned this court for a decree enforcing an order issued by the Board on March 6, 1951,[1] against respondents, Harvey Stoller (an individual doing business as Richland Laundry & Dry Cleaners) and Laundry & Dry Cleaners Union, Local 197 (a labor organization), in a proceeding under § 10 of the National Labor Relations Act, 29 U.S.C.A. § 160. Answering the petition, respondents pray that the order be set aside.

At all pertinent times, respondent Stoller operated a laundry and dry-cleaning establishment at Richland, Washington, on an atomic energy reservation of the United States—a reservation operated by the Atomic Energy Commission as part of the national defense program—respondent Stoller being a lessee of the Commission. Irene Hallenbeck, Florence Jonson, Noland Teal, Donald Donahue and Alma Donahue were employees of respondent Stoller.

On January 25, 1950, respondent Stoller made an agreement with respondent Union to require as a condition of employment membership in respondent Union. Respondent Union was not the representative of respondent Stoller's employees as provided in § 9(a) of the Act, 29 U.S.C.A. § 159(a). However, in March, 1950, at the request of respondent Union, respondent Stoller discharged Hallenbeck, Jonson, Teal and the Donahues because they were not, and refused to become, members of respondent Union, and thereafter, for the same reason, respondent Stoller refused to reinstate them. Thus, on and after January 25, 1950, respondent Stoller engaged in un-

fair labor practices listed in § 8(a) of the Act, 29 U.S.C.A. 158(a), and respondent Union engaged in unfair labor practices listed in § 8(b) of the Act, 29 U.S.C.A. § 158(b).

On charges filed by Hallenbeck, Jonson, Teal and the Donahues in April, 1950, and an amended charge filed by Hallenbeck on July 17, 1950, a duly designated agent of the Board issued a complaint against respondents on July 19, 1950. Respondents answered the complaint, and a hearing was had and evidence presented before a trial examiner. The trial examiner's findings of fact, conclusions of law and recommendations were stated in an intermediate report which, together with a recommended order, he issued and caused to be served on the parties and filed with the Board. Respondents filed exceptions, and the Board, on March 6, 1951, rendered a decision and issued the order here sought to be enforced. Thereby respondents were required to cease and desist from their unfair labor practices and to take certain affirmative action which the Board found would effectuate the policies of the Act.

First. Respondents contend that the Board had no jurisdiction to issue the order.

Whether the Board had such jurisdiction depends on whether respondents' unfair labor practices were unfair labor practices affecting commerce.[2] See § 10 (a), (b) and (c) of the Act, 29 U.S.C.A. § 160(a), (b) and (c).

As indicated above, respondent Stoller operated a laundry and dry-cleaning establishment in the State of Washington. However, the trial examiner found that during respondent Stoller's fiscal year ending in August, 1950, he purchased supplies, including soap, cleaning solvents and paper, amounting to approximately $24,000 in value, about one-half of which was shipped to him from

---

1. Richland Laundry & Dry Cleaners, 93 N.L.R.B. 680.

2. As used in this opinion, the term "commerce" has the meaning indicated in §

2(6) of the Act, 29 U.S.C.A. § 152(6), and the term "affecting commerce" has the meaning indicated in § 2(7) of the Act, 29 U.S.C.A. § 152(7).

points outside the State of Washington, and that respondents' unfair labor practices had a close, intimate and substantial relation to commerce and tended to lead to labor disputes burdening and obstructing commerce and the free flow of commerce. These findings were adopted by the Board. They are supported by substantial evidence on the record considered as a whole and hence are conclusive. See § 10(e) of the Act, 29 U.S.C.A. § 160(e).

 The trial examiner and the Board concluded, and we agree, that respondents' unfair labor practices were unfair labor practices affecting commerce. See § 2(6) and (7) of the Act, 29 U.S.C.A. § 152(6) and (7). The commerce affected—approximately $12,000 a year—was not so insignificant as to come within the rule *de minimis non curat lex*.

The Board, therefore, had jurisdiction to issue the order.

Second. Respondents contend that, if the Board had jurisdiction to issue the order, such jurisdiction should not have been exercised.

 The general rule is that, where the Board has jurisdiction, as it had in this case, whether such jurisdiction should be exercised is for the Board, not the courts, to determine.[3] In this case, the Board determined that its jurisdiction should be exercised because respondent was doing business on an atomic energy reservation.[4] We cannot say that the Board was wrong in so determining.

In support of their contention that the Board's jurisdiction should not have been exercised in this case, respondents cite N.L.R.B. v. Guy F. Atkinson Co., 9 Cir., 195 F.2d 141, wherein this court refused to enforce an order issued by the Board on June 8, 1950, against an employer (the Company) in a proceeding under § 10 of the Act, 29 U.S.C.A. § 160—an order requiring the Company to cease and desist from certain unfair labor practices and to take certain affirmative action. The Company was engaged in the construction industry. Its unfair labor practices occurred in 1947, at a time when the Board, pursuant to a long established policy, was refusing to exercise jurisdiction over the construction industry. The policy of refusing to exercise such jurisdiction was consistently followed by the Board from the Board's creation in 1935 until after the Company's unfair labor practices occurred. The Company, in engaging in such practices, relied on that policy. Thereafter the Board adopted a new policy and, pursuant thereto, proceeded against the Company with the result indicated above. On the facts shown, this court held that the Board's action in the Atkinson case was arbitrary, capricious and an abuse of discretion, within the meaning of § 10(e) of the Administrative Procedure Act, 5 U.S.C.A. § 1009(e).

The facts of the instant case differ from those of the Atkinson case in many respects, including the following: Respondent Stoller was not engaged in the construction industry, but was engaged in the laundry and dry-cleaning industry. The Board did not, at the time respondents' unfair labor practices occurred or at any time prior thereto, have any policy of refusing to exercise jurisdiction over the laundry and dry-cleaning industry. Instead, the Board frequently exercised such jurisdiction.[5] So far as the record shows, respondents, in engaging

---

3. N.L.R.B. v. Townsend, 9 Cir., 185 F.2d 378; Haleston Drug Stores, 9 Cir., 187 F.2d 418; Katz v. N. L. R. B., 9 Cir., 196 F.2d 411.

4. The Board held that any employer doing business on such a reservation was "so identified with the Government's national defense program as to warrant the full exercise of the Board's power to assert the jurisdiction conferred on it by the Act."

5. See Arcade-Sunshine Co., 12 N.L.R.B. 259, modified and enforced as modified in N. L. R. B. v. Arcade-Sunshine Co., 73 App.D.C. 128, 118 F.2d 49; White Swan Co., 19 N.L.R.B. 1079, modified and enforced as modified in N. L. R. B. v. White Swan Co., 4 Cir., 118 F.2d 1002; Quality & Service Laundry, 39 N.L.R.B. 970, enforced in N. L. R. B. v. Quality & Service Laundry, 4 Cir., 131 F.2d 182; Star Dyers & Cleaners, 53 N.L.R.B. 514;

in their unfair labor practices, did not rely on any policy of the Board.

Obviously, the Atkinson case is not in point here, nor is there here any basis for holding that the Board's action in the instant case was arbitrary, capricious or an abuse of discretion.

The Board's order will be enforced.

H. B. Harwell, 55 N.L.R.B. 845; Liberty Laundry Co., 62 N.L.R.B. 1235; Sam Boorstein, 64 N.L.R.B. 645; Horton's Laundry, 72 N.L.R.B. 1129; Arrow Linen Service, 73 N.L.R.B. 868.