NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

W. B. JONES LUMBER COMPANY, Inc., and Lumber and Sawmill Workers' Union, Local 2288, AFL, Respondents.

No. 15172.

United States Court of Appeals Ninth Circuit.

March 29, 1957.

Kenneth C. McGuiness and Theophil. C. Kammholz, Gen. Counsel, Marcel Mallet-Prevost and Stephen Leonard, Asst. Gen. Counsel, Darrel Singer, Frederick. U. Reel and Maurice Alexandre, Washington, D. C., for petitioner.

James M. Nicoson and Arthur Garrett,. Los Angeles, Cal., for respondents.

Before FEE and CHAMBERS, Circuit Judges, and YANKWICH, District Judge.

JAMES ALGER FEE, Circuit Judge.

This petition for enforcement of an order of the National Labor Relations Board presents in general questions of the exercise of jurisdiction and questions of fair hearing and due process of law.

W. B. Jones Lumber Company, Inc., was engaged in operations which the Board found affected commerce. Don F. Tooze was hired by the Company on October 28, 1954. Before he left his former job, he had been found guilty by his union of engaging in dual unionism. Tooze made an effort to pay up his arrears and join the plant local, but the union refused. The business agent of the plant local would not grant Tooze a work permit for November. And on November 17 another Union representative told the yard superintendent for the Company that Tooze was not a member of the plant local and he would have to be pulled off the job or the Union would put a picket line around the yard. The superintendent reluctantly agreed. Tooze was then not permitted to work. Acting upon advice from the Company, Tooze offered to pay the Union back dues, initiation fees and dues to the plant local, but the business agent replied that the Union could not accept dues owed to "another union" and rejected the offer to join Local 2288, AFL, here respondent.

After hearing, the trial examiner recommended and the Board unanimously found that respondent denied membership to Tooze, refused a work permit, and caused his discharge because he was not a member. The Board found there was no valid union security agreement between Local 2288 and the Company and that respondent violated §§ 8(b) (1) (A) and 8(b) (2) and the conduct of the Company violated § 8(a) (1) and (3) of the Act.[1]

Local 2288 alone resents enforcement of the order. The questions raised are as follows:

"1. Whether the Board's Findings of Fact and Conclusions of Law that it had assertable jurisdiction over this controversy are supported by substantial evidence.

"2. Whether the Board afforded respondent union the requisites of a fair hearing and due process of law.

"3. Whether the Board's Findings of Fact and Conclusions of Law that respondent violated Section 8 (b) (2) of the Act are supported by substantial evidence.

"4. Whether the Board's Order as to respondent union is too broad and hence unenforceable."

■ The third question may be dealt with shortly. There was substantial evidence to support the findings of fact made by the trial examiner and adopted by the Board. In truth, there was no conflict of consequence on the facts in relation to the incidents which led to discharge. Therefore, these findings are accepted. The jurisdictional matters will be considered later.

■ The fourth question has been answered many times by this Court. The Board is given administrative responsibility as to questions of policy in this field. The Board deems the measures set out in the order essential to enforce the policy. This Court will not therefore attempt to interfere unless some mistake of fact or law has been discovered. Even in such instances, our policy has been to remand for reconsideration rather than to strike down the order.

■ If the first question be considered next, it will be found that the Board had jurisdiction by statute over any operations of a company which affect commerce within the meaning of the Act.[2]

There is no question of the power of the Board to act in the field. There is no question of the authority of the Board to resolve all controversy over coverage in a field where it had jurisdiction by statute.[3]

■■ The Union contends that the Board should not assert in this case the jurisdiction which all agree it possesses.

1. 29 U.S.C.A. §§ 158(b) (1) (A), 158(b) (2), 158(a) (1) and (3).

2. 29 U.S.C.A. § 160(a).

3. National Labor Relations Board v. Stoller, 9 Cir., 207 F.2d 305, certiorari denied 347 U.S. 919, 74 S.Ct. 517, 98 L.Ed. 1074. See also Endicott Johnson Corporation v. Perkins, 317 U.S. 501, 63 S. Ct. 339, 87 L.Ed. 424; Bland Lumber Co. v. National Labor Relations Board, 5 Cir., 177 F.2d 555.

The Board should, so the Union contends, be bound by certain self-limiting standards gratuitously adopted by the Board itself.[4] These standards, so announced, could not limit the jurisdiction conferred by Congress. The Board did not proclaim that, in all cases involving less monetary amounts than those contemplated by such regulations, the business in such amounts would never in a particular case have sufficient impact upon commerce to warrant the exercise of the powers of the Board.[5] The purpose of these standards seems to have been to adopt a general rule of thumb so that the Board could concentrate its energies upon cause where the activities did have a substantial effect upon commerce as defined by the Act. It would not appear subversive if the Board had decided that the activities in extraordinary cases were such that there was a substantial effect upon commerce so defined,[6] notwithstanding the traffic fell far below the standards in monetary value.

Although this question has been discussed, it is not justiciable, in our opinion, unless either the activities fell outside the jurisdictional terminals set up by Congress or unjust discrimination were involved in the consideration of one case and refusal to hear others unfair or lacking in due process. If the rights and guaranties have been protected and the Board acts within the scope of its statutory authority, the question of whether or not it chooses to act within the established limits is one of policy.

The courts are not vested with authority to control such exercise of prerogative.[7] Furthermore, the Union has no right to challenge the exercise or non-exercise of any jurisdiction with which Congress has endowed the Board.

The attack here really consists in a protest against the use by the Board of evidence claimed to be irrelevant and impertinent to establish the fact that the operations of the Company and certain of its customers did conform to or exceed the standards set up by the Board itself.

█ The objections to this evidence are technical in the extreme. Principally, the objections are that witnesses were permitted to estimate the volume of business transacted by a particular company or companies in commerce or in total production, or to give summaries prepared from the books of the particular entity. In federal courts, such evidence has been habitually received in important civil cases and in criminal prosecutions. Unquestionably, if the facilities for proper cross-examination were denied, there would be a failure of due process. Federal courts generally require the books so summarized to be produced in court for the purpose of cross-examination of the witness who has estimated the result thereof or summarized the contents.

However, the method used is not essential. The facilities for cross-examination are essential and vital. The trial

---

4. Reliance in this respect is placed upon Jonesboro Grain Drying Cooperative, 110 N.L.R.B. No. 67.

5. In Jonesboro, supra Note 4, the Board, after pointing out that a revision of monetary jurisdictional standards would better effectuate its policy "of limiting the exercise of its jurisdiction to enterprises whose operations have, or at which labor disputes would have, a pronounced impact upon the flow of interstate commerce," said: "Accordingly, we have determined that in future cases the Board *will assert jurisdiction* over enterprises which annually meet one or more of the following standards: * * *." (Emphasis added.) While the petition in this

case was dismissed for failure to meet any of the standards therein set forth, the Board did not say that it never would assert jurisdiction in cases involving less than the specified amounts.

6. See 29 U.S.C.A. §§ 152(7), 142(1).

7. "The general rule is that, where the Board has jurisdiction, as it had in this case, whether such jurisdiction should be exercised is for the Board, not the courts, to determine." National Labor Relations Board v. Stoller, 9 Cir., 207 F.2d 305, 307. See also Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 183 v. National Labor Relations Board, 9 Cir., 238 F.2d 195.

examiner directed that all these witnesses permit the examination of the records of the company or companies concerning which they testified to be made available to the representatives of the Union. Further, he announced that, if "the respondent union has any difficulty in verifying any of the information from the records, I would entertain a motion to strike all of the testimony that has been given in connection with the figures." This was fair and involved no lack of due process.

■■ The Board is not required to observe the legal rules of evidence as are common law courts.[8] Therefore, the evidence offered was admissible even though it may have involved hearsay. Further, the holding of the trial examiner that it was not "practicable" to require the records of all these companies to be brought into the room where he was sitting was not a denial of due process or the right of preparation for cross-examination. It was within the discretion of the Board, and the Board affirmed the trial examiner.

■ The trial examiner corrected the record of testimony of one witness from the figure $32,415.68, shown, to $324,015.68, from his own memory of the testimony. The common law courts have always recognized the power of the trial judge over the record. No reason is seen for circumscribing the power of the trial examiner acquiesced in by the Board.

■ Another objection is that "The signature of the Regional Director was placed [on the complaint] * * * by a person other than that officer without any order of the Board having been issued authorizing the same." The Board paid no attention to this specification. Neither will this Court.

The enforcement of the order in all respects is directed.

8. 29 U.S.C.A. § 160(b). See National Labor Relations Board v. Cantrall Co., 9 Cir., 201 F.2d 853, certiorari denied, 345 U.S. 996, 73 S.Ct. 1139, 97 L.Ed. 1403. Compare National Labor Relations Board v. Haddock-Engineers, Ltd.,

9 Cir., 215 F.2d 734, disallowing hearsay absolutely uncorroborated. Such was not the case in National Labor Relations Board v. Cantrall Co., supra, nor is it here.