833 F.2d 1012
 128 L.R.R.M. (BNA) 2296
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
EVERY WOMAN'S PLACE, INC., Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner.
 Nos. 87-5025, 87-5130.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1987.
 
 Before MERRITT, KRUPANSKY and RYAN, Circuit Judges.
 MERRITT, Circuit Judge.
 
 
 1
 This petition to review the National Labor Relations Board Decision and Order by Every Woman's Place, a charitable organization for run-a-way children, raises two issues: Whether the NLRB had jurisdiction of the claimed unfair labor practice and whether Cathee Doran, an employee of the charitable institution, was engaged in protected concerted activity under Sec. 7 of the National Labor Relations Act when she telephoned the Wage and Hour Division of the Department of Labor to inquire about overtime pay requirements, conduct for which she was discharged by Beverly Geyer, the director of Every Woman's Place. We agree with the NLRB that Every Woman's Place violated Sec. 8(a)(1) of the NLRA when it discharged Doran, and therefore we affirm.
 
 
 2
 In order for the NLRB to have jurisdiction, the financial characteristics of the charitable organization must satisfy a two-prong test derived from case law: the charitable institution must have (1) annual gross revenues greater than $250,000, N.L.R.B. v. Kent Cty. Ass'n for Retarded Citizens, 590 F.2d 19, 20-23 (1st Cir.1978), St. Aloysius Home, 224 N.L.R.B. 1344, 1345 (1976); Salt & Pepper Nursery School & Kindergarten No. 2, 222 N.L.R.B. 1295 (1976); and (2) must have more than a de minimus impact on the flow of interstate commerce. N.L.R.B. v. West Side Carpet Cleaning Co., 329 F.2d 758, 760 (6th Cir.1964); N.L.R.B. v. Aurora City Lines, Inc., 299 F.2d 229, 231 (7th Cir.1962). Here the institution's gross revenues exceeded $350,000 during the fiscal year when Doran was discharged, and therefore the first prong of the test was easily satisfied.
 
 
 3
 On the second requirement of impact on interstate commerce, the Board found that the institution's contract for $50,000 in services for the State of Michigan satisfied the test. We do not find that this decision is arbitrary or beyond the authority of the Board. See NLRB v. Marsden, 701 F.2d 238, 240-41 (2d Cir.1983); N.L.R.B. v. Southeastern Ass'n for Retarded Citizens, 666 F.2d 428, 429-31 (9th Cir.1982); N.L.R.B. v. Carroll-Naslund Disposal, Inc., 152 N.L.R.B. 861, 862-3 (1965), enforced, 359 F.2d 779, 780 (9th Cir.1966); Seimons Mailing Service, 122 N.L.R.B. 81, 85 (1958).
 
 
 4
 We also affirm the Board's decision that Doran's act of making the telephone call represented concerted activity under Sec. 7 of the NLRA. The NLRB adopted findings of fact made by the Administrative Law Judge that concern about compensation for work on holidays was shared by several of the institution's employees, not just Doran. Several weeks prior to the telephone call, Doran and two fellow employees brought the matter to their supervisor's attention on at least four occasions. The supervisor treated the matter as a concern of the group, rather than solely Doran, as evidenced by his announcement to the employees that he would investigate the issue. Also, Doran testified that she made the telephone call because "we" had no response from supervisors. We conclude that the Board's findings on the concerted activity issue are supported by substantial evidence, and that the Board did not err in defining "concerted activity" under Secs. 7 and 8(a) of the Act.
 
 
 5
 Because the Board had jurisdiction, and Doran was engaged in concerted activities, we enforce the order of the Board.